**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

| | |
|---|---|
| **MARK STEVEN SALVETTI** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Civil Action No. WGC-09-2576** |
| | ) |
| **MICHAEL ASTRUE** | ) |
| **Commissioner of Social Security** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

## MEMORANDUM OPINION

Plaintiff Mark Steven Salvetti ("Mr. Salvetti" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383f.  The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition.  *See* ECF Nos. 3, 7-8.[1]  Pending and ready for resolution are Plaintiff's Motion for Summary Judgment, or in the Alternative, Motion for Remand (ECF No. 17) and Defendant's Motion for Summary Judgment (ECF No. 35).  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons set forth below, Plaintiff's Alternative Motion for Remand will be granted and Defendant's Motion for Summary Judgment will be denied.

---

[1] The case was subsequently reassigned to the undersigned.

1. **BACKGROUND**

On April 8, 2004 Mr. Salvetti filed applications for DIB[2] and SSI alleging a disability onset date of March 22, 2004 due to a herniated lumbar disc. *See* R. at 53-55, 75. Mr. Salvetti's applications were denied initially on July 8, 2004. R. at 39-41. On September 2, 2004 Mr. Salvetti requested reconsideration, R. at 42, and on December 2, 2004 the applications were denied again. R. at 43-44. Thereafter, on January 20, 2005, Mr. Salvetti requested a hearing before an Administrative Law Judge ("ALJ"). R. at 45. On January 18, 2007 the ALJ convened a hearing. R. at 315-62. Mr. Salvetti was represented by counsel at this hearing. The ALJ obtained testimony from Mr. Salvetti and a vocational expert ("VE"). On February 22, 2007 the ALJ issued a partially favorable decision. Specifically, the ALJ found Mr. Salvetti was disabled beginning March 22, 2004, the alleged onset date of disability, through January 1, 2006. The ALJ however found Mr. Salvetti's disability ended on January 1, 2006. Therefore, from January 1, 2006 to the present, Mr. Salvetti was not disabled. R. at 26. Mr. Salvetti requested a review of the hearing decision. R. at 9. On August 28, 2007 the Appeals Council denied Mr. Salvetti's request for review, R. at 5-8, thus making the ALJ's determination the Commissioner's final decision.

On October 26, 2007 Mr. Salvetti filed a civil action in this court. *See Salvetti v. Astrue*, PWG-07-CV-2920, ECF No. 1. Subsequently, on September 12, 2008, the Commissioner moved for a remand of the case pursuant to the Social Security Act, Sentence Four of 42 U.S.C. § 405(g), with the consent of Plaintiff. *Id.*, ECF No. 21. Four days later this court granted the

---

[2] Mr. Salvetti "has acquired sufficient quarters of coverage to remain insured through March 31, 2007." R. at 14. *See also* R. at 56, 84.

motion, remanding the case to the Commissioner for further administrative proceedings.  *Id.*,

ECF No. 22.

On November 15, 2008 the Appeals Council remanded the case to the ALJ.  In the

*Affirmation and Order of Appeals Council*, the ALJ was advised and instructed as follows:

> The U.S. District Court for the District of Maryland (Civil Action Number 1:07-cv-02920-PWG) has remanded this case to the Commissioner of Social Security for further administrative proceedings.
>
> The Administrative Law Judge issued a decision on February 22, 2007 finding that considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed from March 22, 2004 through January 1, 2006.  He[3] also found that medical improvement occurred beginning January 1, 2006 and considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy.  The Appeals Council affirms the finding that the claimant was disabled from March 22, 2004 through January 1, 2006.
>
> The Appeals Council hereby vacates the final decision of the Commissioner of Social Security with respect to the period after January 1, 2006 and remands this case to an Administrative Law Judge for resolution of the following issues:
>
> - The hearing decision (Tr. 23) indicates that the claimant "no longer requires pain management and that he does not require significant active care other than for conservative routine maintenance."  However, Dr. James Sides, on November 14, 2006, continued to prescribe pain medication (Duragesic, Percocet, and Flexeril) (Tr. 295-301, 339), and the claimant testified that Dr. Sides functioned as his pain management physician (Tr. 338).  Additionally, the claimant described side effects from his medications.  The claimant testified that he experienced some dizziness, doziness, and he did not wear the Durages[]ic patch to the hearing, because he had to drive (Tr. 341-42).  The claimant also testified that the dosage of his pain medication had been increased three times (Tr. 339).  Further evaluation of the claimant's subjective complaints is needed.

---

[3] The ALJ is Judith A. Showalter.

- The record reveals that the claimant is 5'7 inches and obese. On May 1, 2004, the claimant weighed 203 pounds, which resulted in a body mass index (BMI) of 31.8 (Tr. 92). On July 1, 2004, the claimant weighed 210 pounds, resulting in a BMI of 32.9 (Tr. 133). On January 18, 2007, the claimant weighed 198 pounds, with a BMI of 31 (Tr. 323). These translate into Level I obesity (Social Security Ruling 02-1p). The hearing decision does not contain an evaluation of the claimant's obesity and its effects on the claimant's other impairments in accordance with the requirements of Social Security Ruling 02-1p.

Upon remand the Administrative Law Judge will:

- Evaluate the claimant's obesity under the criteria in Social Security Ruling 02-1p.

- Evaluate the issue of disability cessation in accordance with 20 CFR 404.1594 and 416.994.

- Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529 and 416.929 and Social Security Ruling 96-7p).

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 96-8p).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence produced by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the

Selected Characteristics of Occupations (Social Security Ruling 00-4p).

The claimant filed subsequent claims for Title II and Title XVI benefits on October 23, 2007. The Appeals Council's action with respect to the current claims renders the subsequent claims duplicate. Therefore, the Administrative Law Judge will associate the claim files and issue a new decision on the associated claims.

In compliance with the above, the Administrative Law Judge will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision on the issue of disability after January 1, 2006.

R. at 384-86.

With regard to the "subsequent claims," on November 14, 2007 Mr. Salvetti filed an application for DIB.[4] R. at 566-69. On November 21, 2007 Mr. Salvetti filed an application for SSI. R. at 570-75. In both applications Mr. Salvetti stated his disability began on March 22, 2004. Mr. Salvetti's applications were denied initially on December 14, 2007. R. at 516-20. Mr. Salvetti requested reconsideration on January 7, 2008 and on March 20, 2008 the applications were denied again. R. at 521-24. On April 16, 2008 Mr. Salvetti requested a hearing before an ALJ. R. at 547-48. In accordance with the Appeals Council's Order of November 15, 2008, these subsequent claims were associated with Mr. Salvetti's original claims. R. at 385.

A supplemental hearing was held on June 5, 2009 in accordance with the Appeal Council's Remand. Mr. Salvetti was again represented by counsel. The ALJ obtained testimony from Mr. Salvetti and a VE. R. at 487-509. In the July 21, 2009 decision the ALJ found Mr.

---

[4] Mr. Salvetti "has acquired sufficient quarters of coverage to remain insured through June 30, 2009." R. at 366. *See also* R. at 584, 586, 600, 632.

Salvetti has not been under a disability after January 1, 2006 through the date of the decision. R. at 377.

Mr. Salvetti apparently declined to request a review of the ALJ's decision by the Appeals Council.[5] The Appeals Council apparently did not assume jurisdiction of the case.[6] In accordance with 20 C.F.R. §§ 404.984(d), 416.1484(d) (2009)[7], the ALJ's decision became the Commissioner's final decision.

2. **ALJ's Decision**.

In the decision of February 22, 2007, the ALJ evaluated Mr. Salvetti's claims for DIB and SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. Mr. Salvetti bears the burden of demonstrating his disability as to the first four steps. At step five the burden shifts to the Commissioner. If Mr. Salvetti's claims fail at any step of the process,

---

[5] In his brief the Commissioner states,

> On July 21, 2009, the ALJ, upon consideration of the entire record, issued a decision denying the claim. Tr. 363-378. On July 23, 2009, the Appeals Council denied Mr. Salvetti's request for review and the ALJ's decision became the final decision of the Commissioner. Tr. 6-8.

Mem. Law Supp. Def.'s Mot. Summ. J. at 2.

The second sentence is inaccurate. First, pages 6 through 8 of the transcript are the Appeals Council's denial of Mr. Salvetti's appeal of the partially favorable decision. This letter is dated **August 28, 2007**, not July 23, 2009. Second, pursuant to 20 C.F.R. §§ 404.984(b), 416.1484(b) (2009), "[t]he exceptions must be filed within 30 days of the date you receive the decision of the administrative law judge or an extension of time in which to submit exceptions must be requested in writing within the 30-day period." The Appeals Council would not have denied Mr. Salvetti's request for review **two days after** the ALJ's July 21, 2009 decision when the 30 day period for Mr. Salvetti to file exceptions had not elapsed.

[6] "Any time within 60 days after the date of the decision of the administrative law judge, the Appeals Council may decide to assume jurisdiction of your case *even though no written exceptions have been filed*." 20 C.F.R. §§ 404.984(c), 416.1484(c) (2009) (emphasis added).

[7] "If no exceptions are filed and the Appeals Council does not assume jurisdiction of your case, the decision of the administrative law judge becomes the final decision of the Commissioner after remand."

the ALJ does not advance to the subsequent steps.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

If Mr. Salvetti is found disabled during any step of the sequential evaluation process, the ALJ must determine if Mr. Salvetti's disability continues or ends through the date of the decision.  The ALJ must follow an eight-step continuing disability review evaluation process for a Title II (DIB) claim and a seven-step continuing disability review evaluation process for a Title XVI (SSI) claim.  *See* 20 C.F.R. §§ 404.1594(f), 416.994(b)(5).  Under either continuing disability review evaluation process, there is no presumption of continuing disability.  *See Rhoten v. Bowen*, 854 F.2d 667, 669 (4th Cir. 1988) (noting, with the enactment of the Social Security Disability Benefits Reform Act of 1984, in determining whether there has been medical improvement resulting in termination of disability benefits, "such a determination must be made on a neutral basis 'without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.'") (citation omitted); *see* 20 C.F.R. §§ 404.1594(b)(6), 416.994(b)(1)(vi) (2009).[8]

At step one of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520, 416.920 the ALJ found Mr. Salvetti has not engaged in substantial gainful activity since March 22, 2004, the alleged onset date of disability.  R. at 18.  The ALJ concluded at step two that Mr. Salvetti's lumbar degenerative disc disease is a severe impairment.  *Id.*  At step three, for the closed period of March 22, 2004 through January 1, 2006, a period during which the ALJ found

---

[8] "Our decisions under this section will be made on a neutral basis without any initial inference as to the presence or absence of disability being drawn from the fact that you have previously been determined to be disabled.  We will consider all evidence you submit, as well as all evidence we obtain from your treating physician(s) and other medical or nonmedical sources.  What constitutes *evidence* and our procedures for obtaining it are set out in [§§ 404.1512 through 404.1518] [§§ 416.912 through 416.918].  Our determination regarding whether your disability continues will be made on the basis of the weight of the evidence."

Mr. Salvetti was disabled, the ALJ determined Mr. Salvetti did not have an impairment or combination of impairments that met or medically equaled the criteria of any of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered Listing 1.04, *Disorders of the spine*, but found the medical evidence and Mr. Salvetti's testimony fail to meet the criteria of the listing. R. at 19.

Next, for the closed period of March 22, 2004 to January 1, 2006, the ALJ determined Mr. Salvetti's residual functional capacity ("RFC"). The ALJ found Mr. Salvetti had the capacity "to perform a limited range of less than sedentary work." R. at 19. The ALJ defined Mr. Salvetti's limitations as follows: "occasionally able to climb stairs and ramps, and occasionally balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes or scaffolds. He was limited to simple, unskilled work due to the side [e]ffects of his medication. He needed to avoid concentrated exposure to and hazards (machinery, heights, etc.)." *Id.* At step four, for the closed period of March 22, 2004 through January 1, 2006, the ALJ found Mr. Salvetti incapable of performing past relevant work. *Id.* at 20. Finally, at step five, for the closed period of March 22, 2004 through January 1, 2006, the ALJ considered Mr. Salvetti's age (45 years old on the alleged disability onset date), education (eighth grade; limited), past work experience (no transferable skills) and RFC (a limited range of less than sedentary work). The ALJ found, from March 22, 2004 to January 1, 2006, "there were no jobs that existed in significant numbers in the national economy that the claimant could have performed[.]" R. at 21.

The ALJ however found Mr. Salvetti's disability ended as of January 1, 2006 due to medical improvement pursuant to 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1). R. at 21. Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which

was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)[.]" *Id.* §§ 404.1594(b)(1), 416.994(b)(1)(i).

For a Title II (DIB) claim, step one of the continuing disability review evaluation process is whether the claimant is engaged in substantial gainful activity? *See* 20 C.F.R. § 404.1594(f)(1). The ALJ found Mr. Salvetti has not engaged in substantial gainful activity since March 22, 2004. R. at 18.

At step two under Title II/step one under Title XVI (SSI), the issue is whether Mr. Salvetti has an impairment or combination of impairments which meets or equals a listing. *See* 20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i). The ALJ found "[b]eginning on January 1, 2006, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i))." R. at 22. At step three under Title II/step two under Title XVI, the ALJ must determine if there has been medical improvement. *See* 20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(5)(ii). The ALJ found medical improvement regarding Mr. Salvetti's lumbar degenerative disc disease.

At step four under Title II/step three under Title XVI, the ALJ must determine whether Mr. Salvetti's medical improvement is related to Mr. Salvetti's ability to do work, specifically, whether there has been an increase in Mr. Salvetti's RFC based on Mr. Salvetti's lumbar degenerative disc disease at the time of the most recent favorable medical determination, meaning the closed period of disability from March 22, 2004 to January 1, 2006. *See* 20 C.F.R.

§§ 404.1594(f)(4), 416.994(b)(5)(iii).  The ALJ found "[m]edical improvement that has occurred is related to the ability to work[.]"  R. at 25.  Specifically, the ALJ found, beginning on January 1, 2006, Mr. Salvetti's RFC increased to a level whereby Mr. Salvetti could perform a significant range of sedentary work.  R. at 22.  During the closed period of disability from March 22, 2004 to January 1, 2006, the ALJ found Mr. Salvetti had an RFC to perform a limited range of less than sedentary work.  Even though Mr. Salvetti's RFC increased from *a limited range of less than sedentary work* to *a significant range of sedentary work*, the limitations remain consistent.  "The claimant is occasionally able to climb stairs and ramps, and occasionally balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes or scaffolds.  He is limited to simple, unskilled work due to the side [e]ffects of his medication.  He must avoid concentrated exposure to and hazards (machinery, heights, etc.)."  R. at 22.

Because the ALJ determined Mr. Salvetti's medical improvement is related to Mr. Salvetti's ability to do work, the ALJ skipped step five under Title II/step four under Title XVI and proceeded to step six under Title II/step five under Title XVI.  *See* 20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v).  This inquiry is whether all of Mr. Salvetti's impairments in combination are severe.  "At all times relevant to this decision, the claimant has had the following severe impairments:  lumbar degenerative disc disease[.]"  R. at 18.

At step seven of Title II/step six of Title XVI, in light of Mr. Salvetti's severe impairment, the ALJ must determine whether Mr. Salvetti can still do work performed in the past.  *See* 20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi).  "Beginning on January 1, 2006, the claimant has been unable to perform past relevant work (20 CFR 404.1565 and 416.965)."  R. at 25.

Finally at step eight of Title II/step seven of Title XVI, if Mr. Salvetti is unable to perform his past relevant work, the ALJ must determine whether Mr. Salvetti can do any other work in light of his age, education, RFC and past work experience. If Mr. Salvetti can perform other work, the disability will be found to have ended. *See* 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii). The ALJ found, based on Mr. Salvetti's age, education, work experience and RFC, Mr. Salvetti "has been able to perform a significant number of jobs in the national economy[,]" R. at 25, relying on the testimony of the VE. The ALJ therefore found Mr. Salvetti's disability ended on January 1, 2006. R. at 26.

After the supplemental hearing on June 5, 2009, the ALJ re-evaluated Mr. Salvetti's claims using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one the ALJ found Mr. Salvetti has not engaged in substantial gainful activity since March 22, 2004, the alleged onset date of disability. R. at 368. The ALJ concluded at step two that Mr. Salvetti's degenerative disc disease and obesity are severe impairments. *Id.* At step three the ALJ determined Mr. Salvetti did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered Listing 1.04, *Disorders of the spine*. "There is no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication to the degree specified in sections 1.04A, 1.04B or 1.04C. In addition, the medical evidence of record does not establish an inability to ambulate effectively, as defined in section 1.00B(2)(b), which would meet the criteria of section 1.04C of the listings." R. at 370. With regard to Mr. Salvetti's obesity, the ALJ noted this condition has been considered an aggravating factor.

Next, the ALJ determined Mr. Salvetti's residual functional capacity. The ALJ found Mr. Salvetti can perform light work as defined in the Regulations with the following limitations: "occasional postural activities, except for no climbing of ropes, ladders, or scaffolds, must avoid concentrated exposure to hazards, and is limited to simple, unskilled work due to medication side effects." *Id*. Besides any limiting effects due to Mr. Salvetti's degenerative disc disease, the ALJ specifically addressed any limiting effects due to Mr. Salvetti's obesity.

> Although the claimant's mild obesity has been found to be a severe impairment, it does not prevent the claimant from ambulating effectively or breathing properly. The claimant has no limitation with respect to gross or fine motor movements. In addition, the evidence fails to show that the claimant's obesity prevents him from performing work on a regular and continuing basis. There are no other significant medical conditions associated with the claimant's obesity, such as hypertension, cardiovascular disease, diabetes, arthritis, gastric disorders, kidney or liver disorders, or severe fatigue, which, alone or in combination, would more than minimally impact the claimant's ability to perform basic work activities.

R. at 376.

At step four the ALJ found Mr. Salvetti is unable to perform any past relevant work. R. at 376. Finally, at step five, the ALJ considered Mr. Salvetti's age (45 years old on the alleged disability onset date and 50 years old as of the hearing date, making him an individual closely approaching advanced age), education (limited), work experience (immaterial) and his RFC (light work with restrictions). Based on Mr. Salvetti's age, education, work experience and RFC, the ALJ found Mr. Salvetti can perform other work that exists in the national economy relying on the testimony of the VE. The ALJ therefore found Mr. Salvetti has not been under a disability after January 1, 2006 through the date of the decision (July 21, 2009). R. at 377.

3.      **Standard of Review**.

The role of this Court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury.  *Hays*, 907 F.2d at 1456.  This Court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence.  *Id.*

4.      **Discussion**.

A.      *Failure to Evaluate Disability Cessation under 20 C.F.R. §§ 404.1594, 416.994*

In the *Affirmation and Order of Appeals Council* the Appeals Council directed the ALJ to perform five specific actions upon remand.  The second action was "[e]valuate the issue of disability cessation in accordance with 20 CFR 404.1594 and 416.994."  R. at 385.  Plaintiff argues the ALJ failed to follow the Appeals Council's Order and thus, on this basis alone, summary judgment is warranted in Plaintiff's favor.

The Commissioner argues the ALJ committed no error.  "In this case, there was no continuing disability review, because Mr. Salvetti has never been determined to be disabled after January 1, 2006.  Rather, Mr. Salvetti's claim was remanded by the AC for further

consideration of the period after January 1, 2006. Because there was no continuing disability review, the Commissioner was not required to evaluate Mr. Salvetti's claim as a CDR." Mem. Law Supp. Def.'s Mot. Summ. J. ("Def.'s Mem.") at 11. According to the Commissioner it was appropriate for the ALJ to evaluate Mr. Salvetti's claims under the sequential evaluation process outlined in 20 C.F.R. §§ 404.1520, 416.920. "Because Mr. Salvetti was applying for a period of disability, and not being reassessed to determine ongoing eligibility for benefits, it was appropriate for the ALJ to apply the sequential evaluation process." Def. Mem. at 11.

The Court disagrees with the Commissioner's arguments. First, contrary to the Commissioner's efforts to contort this case into a certain shape, this case is, *in fact*, a continuing disability review. It is readily apparent in the ALJ's decision of February 22, 2007. The ALJ followed the sequential evaluation process of 20 C.F.R. §§ 404.1520, 416.920 in finding that Mr. Salvetti was disabled for the period of March 22, 2004 through January 1, 2006. Within that same opinion, the ALJ then followed the continuing disability review evaluation process of 20 C.F.R. §§ 404.1594(f), 416.994(b)(5) to determine whether Mr. Salvetti's disability continues <u>or</u> ends. The ALJ found Mr. Salvetti's disability *ended* as of January 1, 2006. The Appeals Council affirmed the ALJ's finding that Mr. Salvetti was disabled from March 22, 2004 to January 1, 2006 but remanded as to the ALJ's finding that Mr. Salvetti ceased to be disabled after January 1, 2006. In re-evaluating the cessation of disability after January 1, 2006, the ALJ would necessarily have to begin anew with the continuing disability review evaluation process in order to determine whether Mr. Salvetti's disability continues <u>or</u> ends.

Second, the Appeals Council **specifically directed** the ALJ to "[e]*valuate the issue of disability cessation in accordance with 20 CFR 404.1594 and 416.994.*" R. at 385 (emphasis

added). The Commissioner is arguing **contrary** to the specific directions of his own Appeals Council.

Third, the ALJ did not have the discretion to apply the sequential evaluation process of 20 C.F.R. §§ 404.1520, 416.920, even if the ALJ believed it was appropriate, as the Commissioner contends. The Appeals Council's instructions were **mandatory**.

> The administrative law judge **shall take** any action that is **ordered by the Appeals Council** and may take any additional action that is not inconsistent with the Appeals Council's remand order.

20 C.F.R. §§ 404.977(b), 416.1477(b) (emphasis added).

The ALJ failed to comply with the Appeals Council's remand order to evaluate the issue of disability cessation in accordance with 20 C.F.R. §§ 404.1594(f), 416.994(b)(5). Moreover, by applying the sequential evaluation process of 20 C.F.R. §§ 404.1520, 416.920 to Mr. Salvetti's claims, the ALJ took action that was **inconsistent** with the Appeals Council's remand order. On this basis alone, the Court will remand this case.

B.     *Failure to Follow Prescribed Treatment*

Plaintiff argues the ALJ cites to Exhibit 15 of the record in support of the assertion that Mr. Salvetti declined to have back surgery. Exhibit 15 concerns the medical reports of Andy Pierre, M.D. for the period of May 20, 2005 through July 20, 2005. *See* R. at 289-93. Plaintiff contends the ALJ improperly relied upon medical records from the closed period of disability from March 22, 2004 to January 12, 2006 to discredit Mr. Salvetti.

By way of background, Dr. Pierre's medical reports of May 20, 2005 and July 20, 2005 indicate that conservative treatment of Mr. Salvetti's back problem has failed. According to the July 20, 2005 medical report Mr. Salvetti had consented to surgery which was scheduled for July

28, 2005.  R. at 290.  It is undisputed that Mr. Salvetti did not have surgery.  At the July 18, 2007

hearing, Mr. Salvetti explained why he elected not to proceed with surgery.

> Q:      And why is that?  Why didn't you get the surgery?
>
> A:      I – – it's been three years since I've been hurt, and I've
> seen a lot of – – I've had – – this is at least my fourth or fifth
> different hearing.  Through my travels of all the, all the rehab and
> stuff like that, I've talked to a lot of people, and I haven't had one
> yet come and tell me, I had the surgery, I love it, it worked.  I've
> had, I've had the surgery, I was okay for the first six months, and
> I'm right back – – as a matter of fact, my first hearing, three
> people went in front of me that had the surgery.  All three of
> them are back.  My sister had the surgery; she's having problems.
> I – –
>
> Q:      So, the bottom line is, through word of mouth, you – –
>
> A:      I just can't – –
>
> Q:      – – you haven't heard any success stories about low-back
> surgery?
>
> A:      I haven't heard any. . . .

R. at 351-52.

Nevertheless Mr. Salvetti was reconsidering surgery.

> Q:      Now, despite that, Dr. Sides' most recent visit report says
> you're considering surgery again.  Why are you reconsidering your
> decision?
>
> A:      I'm reconsidering it because I'm going nuts.  I'm home 95
> percent of the time.  I don't go anywhere, I can't do anything
> without causing pain.

R. at 353.

In the July 21, 2009 decision following remand, the ALJ wrote, "[d]espite the claimant's

contention that conservative measures have failed to alleviate his symptoms, the evidence of

record shows that the claimant declined the opportunity to have back surgery when it was offered to him (Exhibit 15F), indicating that his symptoms and limitations were not of the severity alleged." R. at 371. It is well-documented in the record that Mr. Salvetti declined to have surgery. *See* R. at 250 (July 22, 2005 visit: "patient is not interested in surgery at this time. He has deferred surgery."), at 249 (August 19, 2005 visit: "Surgery has been declined by the patient."), at 248 (September 16, 2005 visit: "Surgery to the lumbar spine has been declined by the patient at this time."), at 244 (December 9, 2005 visit: "Surgery to the lumbar areas has been suggested by the neurosurgeon, but is declined by the patient."). The Court notes all of these instances where Mr. Salvetti declined surgery occurred during the closed period of disability from March 22, 2004 to January 1, 2006. The Appeals Council **affirmed** the finding of disability for this closed period. It is unclear to the Court why the ALJ would rely on this evidence from the closed period of disability for determining whether disability should continue or cease after January 1, 2006, especially in light of the evidence *after* January 1, 2006.

More specifically, in the July 21, 2009 decision following remand, the ALJ wrote, "[a]lthough the claimant testified to constant daily pain imposing significant restrictions in daily activities, the undersigned notes that he has not pursued any further treatment options since January 2006, other than taking prescription medications, with some relief reported." R. at 375. At the hearing following remand Mr. Salvetti explained why he did not have surgery.

> Q:    And did you have, you had, since you were here for the hearing have you had any surgery on your back?
>
> A:    No, they don't want to do a surgery.

R. at 495.

Mr. Salvetti's testimony is substantiated by the September 27, 2007 medical report of Dr. Charles J. Lancelotta.  The ALJ summarizes Dr. Lancelotta's report in the July 21, 2009 decision.  *See* R. at 374.  The ALJ however omits any reference to the following opinion by Dr. Lancelotta:

> Mr. Salvetti specifically told me that he did not have significant radicular symptoms and most of the time did not have any leg pain.  That being the case, I am not certain at all that this gentleman would do well with *any type of surgery* since his main problem[] is his lower back and not radicular symptoms.

R. at 400, 649.  Interestingly, back on October 14, 2004, after examining Mr. Salvetti, Dr. Pierre opined,

> Although there is definitely disc herniation at the L4-5 level I am not convinced that this is the main cause of his symptoms. Overall he has fairly minimal signs and symptoms of radiculopathy but very significant low-back pain.  This may be primarily due to a musculoskeletal injury at the time of the work related accident on March 17, 2004.  In light of this I do not feel that surgical decompression would be in his best interest at this time.

R. at 236.

By failing to complying with the Appeals Council's Order to "[e]valuate the issue of disability cessation in accordance with 20 CFR 404.1594 and 416.994[,]" R. at 385, the ALJ has not made findings in accordance with the continuing disability review evaluation process and thus substantial evidence does not support the ALJ's determination with regard to Mr. Salvetti's failure to follow prescribed treatment.

C.     *Failure to Address Prior Exertional Limitation*

Plaintiff notes the ALJ determined Mr. Salvetti has a residual functional capacity to perform a significant range of sedentary work after January 1, 2006 in the February 22, 2007

decision.  However, in the July 21, 2009 decision following remand, the ALJ found Mr. Salvetti

has a residual functional capacity to perform light work.  In this July 21, 2009 decision following

remand, the ALJ made no reference to the residual functional capacity finding from the

February 22, 2007 decision.  "ALJ Showalter's failure to note her prior sedentary finding wreaks

of result-oriented decision making."  Mem. P. & A. Supp. Mot. Summ. J. at 12.

By failing to evaluate the issue of Mr. Salvetti's purported disability cessation in

accordance with the continuing disability review evaluation process as ordered by the Appeals

Council, the ALJ did not consider the prior residual functional capacity as mandated by the

Regulations.  20 C.F.R. §§ 404.1594(c)(3)(ii), 416.994(b)(2)(iv)(B) state,

> The residual functional capacity assessment used in making the
> most recent favorable medical decision *will be compared* to the
> residual functional capacity assessment based on current
> evidence in order to determine if your functional capacity for
> basic work activities has increased.  There will be no attempt to
> reassess the prior residual functional capacity.

Emphasis added.

A remand is warranted since the ALJ failed to follow the instructions of the Appeals

Council in evaluating the alleged period of disability after January 1, 2006.

5. **Conclusion**.

Substantial evidence does not support the decision that Plaintiff is not disabled.

Accordingly, the Plaintiff's Alternative Motion for Remand will be granted and Defendant's

Motion for Summary Judgment will be denied.

Date: <u>December 21, 2011</u>                    _____/s/_____
                                                             WILLIAM CONNELLY
                                                    UNITED STATES MAGISTRATE JUDGE